UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

PEDRO PABLO COLLAZO CRUZ and
ODALYS RODRIGUEZ,

    Plaintiffs,

v.                                                    Case No. 8:17-cv-02627-T-02SPF

BANK OF AMERICA, N.A.,

    Defendant.
_____/

## ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. Dkt. 139. Plaintiffs filed a Memorandum in Opposition to Defendant's Motion for Summary Judgment. Dkt. 146. Defendant filed a reply. Dkt. 147. The Court held a hearing on this matter on March 12, 2020. With the benefit of full briefing and able argument by both sides, the Court grants in part and denies in part Defendant's Motion for Summary Judgment, Dkt. 139, pursuant to Fed. R. Civ. P. 56.

### BACKGROUND

Pedro Pablo Collazo Cruz and Odalys Rodriguez ("Plaintiffs") allege that Bank of America ("BOA") committed common law fraud against them while Plaintiffs were applying for the Home Affordable Modification Program

("HAMP") after the 2008 financial crisis. Dkt. 103 at 15–18. Plaintiffs allege that BOA made false statements to induce Plaintiffs to default on their mortgage, to incur the expense of resending their application materials, and to make "trial payments" under the HAMP program which were either retained for profit or applied to fraudulent inspection fees. They also complain of fraudulent and inequitable conduct in the administration of the HAMP program.

Only Mr. Cruz applied for the loan, Dkt. 141-4, but both Mr. Cruz and Ms. Rodriguez signed the mortgage, Dkt. 141-6, on August 15, 2007. Dkt. 103 at 10. The lender was SCME Mortgage Bankers, Inc., and BOA subsequently started servicing the loan. Dkt. 103 at 10; Dkt. 141-6 at 1. The home was foreclosed on by BOA on May 16, 2012, and Plaintiffs moved out. Dkt. 103 at 13. This is the end of the undisputed facts in the record.

Before addressing the remaining disputed facts, it is first important to note any decision rendered in this case must be done without the key testimony of Mr. Cruz who passed away in May 2018. Dkt. 146 at 15. Mr. Cruz was the plaintiff who dealt with BOA and the lawyers in Orlando.[1] While Ms. Rodriquez testified that she would listen to the phone calls between BOA and her husband, she was

---

[1] In Ms. Rodriguez's deposition she refers to her husband working with lawyers in Orlando, but she does not know their names. In BOA's motion and reply it relies on the assertion that Plaintiffs were represented by counsel in its argument for summary judgment. Dkt. 139 at 2; Dkt. 147 at 3. The identity of these attorneys is not in the record, nor is what precisely they did while representing Plaintiffs.

2

not the spouse primarily responsible for handling the mortgage and she testified to not dealing with the attorneys from Orlando, to the extent where she did not even know their names. This leaves the Court with an unfillable gap in testimony.

Ms. Rodriguez's testimony varies substantially from the documents that BOA submitted to the Court. Her version of events is almost irreconcilable to the facts BOA presents. However, at the summary judgment stage the conflicts in evidence must be resolved in her favor. *See Newsome v. Chatham Cty. Det. Ctr.*, 256 F. App'x 342, 346 (11th Cir. 2007); *Price v. Time, Inc.*, 416 F.3d 1327, 1345 (11th Cir. 2005).

Plaintiffs allege that on September 7, 2009, a BOA representative falsely told them they were approved for HAMP and requested they start making $970.00 trial payments. Dkt. 103 at 12. Plaintiffs allege that they made six payments of $970 in 2010 and 2011. Dkt. 103 at 13.[2] At Ms. Rodriguez's deposition BOA provided a letter dated January 8, 2011 which stated that Plaintiffs were not eligible for HAMP, but did not give a reason, and told them to instead apply for loan modification offered by Fannie Mae. Dkt. 141-8 at 22. Ms. Rodriquez testified that her husband faxed all the documents that were requested for the modification and that BOA's April 5, 2011 letter saying they were not eligible for

---

[2] In her deposition Ms. Rodriguez said they made payments of $968 in 2009 and in 2011. Dkt. 141-3 at 101–02, 104.

3

the Fannie Mae Modification Program because they did not provide all the requested documents was not true. Dkt. 141-3 at 106–07; Dkt. 141-8 at 34.

      Plaintiffs allege they applied for HAMP again later in 2011. Dkt. 141-3 at 106. Ms. Rodriguez testified that they received the modification in 2011 and they would make payments over the phone in 2011 and 2012 but those payments did not show up on the computer and when they would call BOA no one knew what they were talking about. Dkt. 141-3 at 100–02. Plaintiffs allege that on August 4, 2011, a BOA representative told them to refrain from making their regular mortgage payments and they relied on this representation. Dkt. 103 at 10; Dkt. 141-3 at 89–90. Ms. Rodriguez testified that after this phone call they faxed the documents to BOA three times and stopping paying their mortgage. Dkt. 141-3 at 90. Prior to August 2011, Ms. Rodriguez testified that they had been paying lawyers in Orlando $1,823.29 every month to handle their loan modification and make their payments. Dkt. 141-3 at 86–87. Ms. Rodriguez did not know the names of the lawyers and did not listen to those phone calls because her husband made them while he was driving. *Id.* at 110. She also testified they could no longer make the payments after August 4, 2011 because of a salary decrease. *Id.* at 90–91.

      Ms. Rodriguez testified intermittently that they either made all their payments or that they were behind only a couple months, but she does not know when, and there was a period of time when they were paying lawyers in Orlando

4

who were handling their loan modification and making their payments.[3] While relevant to the outcome at trial, the exact timing of when Plaintiffs stopped making payments resulting in the default on the mortgage does not need to be determined for summary judgment.

Finally, Plaintiffs allege BOA charged them for twenty-three property inspections between 2009 and 2012, which were impermissible, while they were still living in the house. Dkt. 103 at 14. Plaintiffs allege that part of BOA's scheme was to charge Plaintiffs these impermissible fees and then BOA would induce Plaintiffs to make trial payments under the guise of the receiving a HAMP modification, but in reality use the trial payments to pay for the inspection fees prior to foreclosing on the home.

## LEGAL STANDARD

Under Rule 56, Federal Rules of Civil Procedure, "[t]he court shall grant

---

[3] Ms. Rodriguez's testimony regarding the Plaintiffs' mortgage payments is muddled. She testified that as of December 2007 they were paying every month. Dkt. 141-3 at 66. She testified that between November 2007 and January 2008 they paid over the phone, but she has no proof of those payments. *Id.* at 46, 62. She testified that prior to May 20, 2009 they were current on all the payments. *Id.* at 56. She also testified that they were current until BOA told them to stop. *Id.* at 54. However, later in the deposition she testified that her husband's income went down in 2009 and he was not making enough to make the payments, and this is why they originally called BOA. *Id.* at 83–84. This is also when Ms. Rodriguez said they hired lawyers in Orlando who were handling their payments. *Id.* at 82, 86–87. The lawyers said they were current on their payments until August 4, 2011. *Id.* at 86. Ms. Rodriguez also talked about making $968 payments after getting the modification in 2011, but those payments did not appear online. *Id.* at 101–02. She also said they made the $968.79 payment due on June 19, 2009. *Id.* at 104. It was at this point in the questioning that Ms. Rodriguez said she knew they were three months behind on their payments at some point but did not know when. *Id.* at 105–06.

summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Mize v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996). An issue of fact is "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if the fact could affect the outcome of the lawsuit under the governing law. *Id.*

The moving party bears the initial burden of identifying those portions of the record demonstrating the lack of a genuinely disputed issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If met, the burden shifts to the non-moving party to "come forward with specific facts showing that there is a genuine issue for trial." *Shaw v. City of Selma*, 884 F.3d 1093, 1098 (11th Cir. 2018) (citation omitted). To satisfy its burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). The non-moving party must go beyond the pleadings and "identify affirmative evidence" that creates a genuine dispute of material fact. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998).

In determining whether a genuine dispute of material fact exists, the Court must view the evidence and draw all factual inferences therefrom in a light most

favorable to the non-moving party and must resolve any reasonable doubts in the non-moving party's favor. *Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1136 (11th Cir. 2007). Summary judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party[.]" *Matsushita*, 475 U.S. at 587.

## DISCUSSION

BOA raises several grounds for summary judgment. BOA argues first that summary judgment should be granted against Mr. Cruz due to his death in 2018 and that a representative was not substituted under Rule 25. Second, BOA argues that the claim is barred by Florida's four-year statute of limitation for fraud claims. BOA contends thirdly that the claim is barred by the doctrine of res judicata and fourth that Plaintiffs could not have reasonably relied on BOA's statements because they had equal access to the underlying information. Finally, BOA asserts that Plaintiffs cannot raise this claim because they failed to notify BOA as required by the mortgage agreement. The Court will address each of these claims in turn.

1) <u>Pedro Pablo Collazo Cruz's Death</u>

BOA argues that summary judgment should be granted against Mr. Pedro Pablo Collazo Cruz because he died on May 31, 2018 and a representative was never substituted. Dkt. 139 at 17. Plaintiffs did not contest this argument and instead stated that because the mortgage was in both Plaintiffs' names, Ms.

7

Rodriguez can continue in her own right. Dkt. 146 at 15. As this issue was not contested, the Court grants summary judgment for BOA against Mr. Pedro Pablo Collazo Cruz.

2) Statute of Limitations

Next, BOA argues that the claim is barred because it was not filed within the statute of limitations. Dkt. 139 at 8–12. Under Florida law, there is a four-year statute of limitations for fraud. Fla. Stat. § 95.11(3). Traditionally, a cause of action accrues "when the last element constituting the cause of action occurs." *Id.* § 95.031(1). "However, actions sounding in fraud do not accrue until 'the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence.'" *Simony v. Fifth Third Mortg. Co.*, No. 2:14-CV-387-FTM-29DNF, 2014 WL 5420796, at *2 (M.D. Fla. Oct. 22, 2014) (quoting Fla. Stat. § 95.031(2)(a)). "Accordingly, fraud causes of action are barred four years after the plaintiff knew or should have known that the fraud occurred." *Id.* This raises the question of when Plaintiffs knew or should have known the alleged fraud occurred.[4]

---

[4] BOA's citation to *McLean v. GMAC Mortg. Corp.* is unpersuasive. No. 06-22795-CIV, 2008 WL 1956285, at *20 (S.D. Fla. May 2, 2008). Contrary to BOA's contention in its reply, the majority of the fraud claims in *McLean* were dismissed for reasons other than statute of limitations. The two sub-claims that were dismissed because of the statute of limitations related to events where the plaintiffs had actual knowledge of the fraud prior to the four-year limit, including where they filed a motion to vacate the foreclosure action based on the fraud. There is no claim of actual knowledge here.

The uncontroverted testimony of Ms. Rodriguez is that she first learned of BOA's alleged fraud in 2016. Dkt. 141-3 at 122. There is no evidence in the record which indicates the Plaintiffs should have been aware of the fraud sooner. Unlike other fraud cases, there were no later dealings between the parties that would have alerted Plaintiffs to BOA's alleged fraud. *See, e.g.*, *Altenel, Inc. v. Millennium Partners, L.L.C.*, 947 F. Supp. 2d 1357, 1371 (S.D. Fla. 2013). Here, Plaintiffs continued to rely on BOA's statements regarding their eligibility for HAMP and that they were missing documents in their HAMP application. Drawing all factual inferences in favor of the non-moving party, this means when the Plaintiffs filed their complaint in 2017, they were within the four-year limitation period for filing.

"Furthermore, the question of when fraud is discovered is a question for the jury." *Bearse v. Main St. Invs.*, 220 F. Supp. 2d 1338, 1345 (M.D. Fla. 2002). Plaintiffs allege they did not discover the fraud until 2016. Any issue regarding the discovery of fraud prior to that point must go to the factfinder.

However, the Plaintiffs allege BOA charged them improper inspection fees prior to any alleged false statements regarding HAMP, the first of which occurred on September 7, 2009.[5] The only grounds Plaintiffs give for this allegation is that they were still living in the home at the time of these inspections making such fees

---

[5] Should evidence at trial indicate that the first false statement occurred after this point in time, BOA is free to raise this argument and exclude other inspection fees as barred by the statute of limitations.

9

impermissible under the HUD Servicing Guidelines. Dkt. 103 at 14. As such the statute of limitations for those inspections began when the fees were incurred by the Plaintiffs and they reasonably could have checked that they were being charged. *See Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1263 (M.D. Fla. 2018). This was long before the statute of limitations began to run on November 3, 2013. So any inspection fee that predates the first allegedly false statement by BOA is barred.[6]

3) <u>Res Judicata</u>

Next, BOA argues that Plaintiffs' claim is barred by res judicata. Dkt. 139 at 12–15. BOA argues that Plaintiffs could have raise their current fraud claim as a defense to the foreclosure and thus they are barred from raising it now. Plaintiffs argue that res judicata does not bar their claim because the fraud was unknown and could not reasonably have been known at the time of the foreclosure. Dkt. 146 at 10–11.

"In considering whether to give preclusive effect to state-court judgments under res judicata or collateral estoppel, the federal court applies the rendering state's law of preclusion." *Cmty. State Bank v. Strong*, 651 F.3d 1241, 1263 (11th

---

[6] To the extent the Plaintiffs may have argued that they were part of the *George* class (*George v. Urban Settlement Services*, 1:13-cv-01819-PAB-KLM (D. Colo)) and that the case should be tolled under *American Pipe & Constr. Co.*, 414 U.S. 538 (1974), they raised no such argument in their response to BOA's motion for summary judgment, despite BOA specifically arguing why the Plaintiffs are not members of the *George* class and that *American Pipe* does not provide tolling. As Plaintiffs failed to raise the argument, the Court will not consider it.

Cir. 2011) (citations omitted). "Under Florida law, res judicata applies where there is: (1) identity of the thing sued for; (2) identity of the cause of action; (3) identity of the persons and parties to the action; (4) identity of the quality [or capacity] of the persons for or against whom the claim is made; and (5) the original claim was disposed on the merits." *Lozman v. City of Riviera Beach, Fla.*, 713 F.3d 1066, 1074 (11th Cir. 2013) (internal quotation marks and footnote omitted). "For res judicata or collateral estoppel to apply, there must also exist in the prior litigation a 'clear-cut former adjudication' on the merits." *Id.* (citation omitted).

"Moreover, the failure to bring a compulsory counterclaim in a state court proceeding bars a subsequent suit in federal court on that claim." *Beepot v. J.P. Morgan Chase Nat'l Corp. Servs., Inc.*, 57 F. Supp. 3d 1358, 1370 (M.D. Fla. 2014), *aff'd*, 626 F. App'x 935 (11th Cir. 2015) (internal quotation omitted). The Florida Supreme Court has adopted the following test to determine whether a counterclaim can be deemed compulsory:

> [A] claim has a logical relationship to the original claim if it *arises* out of the same aggregate of operative facts as the original claim in two senses: (1) that the same aggregate of operative facts serves as the basis of both claims; or (2) that the aggregate core of facts upon which the original claim rests activates additional legal rights in a party defendant that would otherwise remain dormant.

*Londono v. Turkey Creek, Inc.*, 609 So. 2d 14, 20 (Fla. 1992) (quoting *Neil v. S. Fla. Auto Painters, Inc.*, 397 So. 2d 1160, 1164 (Fla. 3d DCA 1981)).

Following the reasoning in the Florida Supreme Court's answer to the Eleventh Circuit's certified question in *Aguilar v. Se. Bank, N.A.*, 728 So. 2d 744, 746 (Fla. 1999), the Court finds that Plaintiffs' fraud claim does not meet the logical relationship test articulated in *Londono* and is not a compulsory counterclaim required to be filed in the foreclosure suit. The foreclosure action focused on the original mortgage agreement between the Parties and Plaintiffs' default under its terms. The present action asserts that BOA made false statements to induce Plaintiffs to act outside the terms of the original mortgage agreement. Thus, Plaintiffs' claim in this action involves separate questions of law and fact from those at issue in the foreclosure. *See, e.g.*, *Sandaler v. Wells Fargo Bank, N.A.*, No. 6:16-CV-1919-ORL-41GJK, 2017 WL 5443149, at *5 (M.D. Fla. Nov. 14, 2017) ("[W]hile the foreclosure action was based on the mortgage and note Plaintiff executed, the instant action is based on Plaintiff's loan modification applications, related documents, and his communications and correspondence—or lack thereof—with Defendant."); *Traver v. Wells Fargo Bank, N.A.*, No. 3:14-CV-895-J-32MCR, 2015 WL 9474612, at *5 (M.D. Fla. Dec. 29, 2015); *Bowen v. Wells Fargo Bank, N.A.*, No. 2:11-CV-91-FTM-29SPC, 2011 WL 3627320, at *4 (M.D. Fla. Aug. 17, 2011) ("This federal case, however, does not advance the same causes of action as in the state case. The issues in this federal case stem from the foreclosure, in that plaintiff asserts that Wells Fargo's actions and

misrepresentations led to the foreclosure, but the claims are separate from the foreclosure. . . . In this case, plaintiff's claims arise from the alleged oral agreement and not from the foreclosure proceeding itself. The Court finds that plaintiff's claims do not pass the *Londono* test, and therefore the claims were not compulsory and are not deemed waived."). *But see Salazar v. Bank of Am., N.A.*, No. 8:17-CV-2535-T-23AEP, 2018 WL 3548753, at *4 n.9 (M.D. Fla. July 24, 2018).

Further, the Eleventh Circuit has held that "res judicata does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim." *Pleming v. Universal-Rundle Corp.*, 142 F.3d 1354, 1357 (11th Cir. 1998). According to the exhibits BOA submitted, it filed for and served Plaintiffs with the foreclosure action in June of 2008. Dkt. 141-16 at 7. This was not only before Plaintiffs allege BOA made any false statement, it was also before the creation of the HAMP program. Plaintiffs had no claim or defense at the time they were served with the foreclosure and had no obligation to supplement their pleadings with this after acquired claim. Regardless of when this claim would have accrued based on delayed discovery for fraud claims,[7] it would have to be after Plaintiffs were served with the foreclosure lawsuit in June 2008.

---

[7] The limitation period for a fraud claim under Florida law does not begin to run until "the facts giving rise to the cause of action were discovered or should have been discovered with the exercise of due diligence[.]" Fla. Stat. § 95.031(2)(a). So if Plaintiffs did not discover or could

Finally, there is no private right of action against loan servicers under the statutory and regulatory scheme which set up HAMP. *Nivia v. Nation Star Mortg., LLC*, 620 F. App'x 822, 825 (11th Cir. 2015) (citing *Miller v. Chase Home Fin., LLC*, 677 F.3d 1113, 1116 (11th Cir. 2012) (per curiam)). BOA's decision, rightfully or wrongfully, to decline Plaintiffs' HAMP loan modification does not create a claim here or a defense in the foreclosure action. BOA has repeatedly argued that Plaintiffs' default on their home occurred irrespective of BOA statements and that Plaintiffs were financially unable to save their home from default and the resulting foreclosure. The record supports this as Ms. Rodriguez testified that they were unable to continue making payments after August 2011. Dkt. 141-3 at 90–91.[8] As HAMP itself created no express private right of action, no action under HAMP by Plaintiffs could have been a compulsory counterclaim to the foreclosure.

Here, Plaintiffs are not challenging the validity of the mortgage or making a claim for fraud in the inducement, which would be barred by res judicata as

---

not have reasonably discovered the facts giving rise to their claim, then it had not yet accrued. *See Madura v. Countrywide Home Loans, Inc.*, No. 8:06-CV-2073-T-24TBM, 2008 WL 2856813, at *18 n.46 (M.D. Fla. July 22, 2008), *aff'd*, 344 F. App'x 509 (11th Cir. 2009).
[8] BOA argues that they were in default prior to this point and Ms. Rodriguez testified that they were three months behind on their payments at some point in time. This may well be true. But the exact date of the default is not relevant if, regardless of what BOA said, Plaintiffs were unable to make their payments resulting in default and, ultimately, foreclosure. Plaintiffs presented no evidence that but for BOA's statements they could have financially saved their home. Thus, there is no issue of material fact relating to Plaintiffs having a defense to the foreclosure.

defenses that could have been brought in the foreclosure action. *See Norris v. Paps*, 615 So. 2d 735, 737 (Fla. 4th DCA 1993) ("At least in some, if not all, cases, fraud in the inducement of a note or mortgage is a compulsory counterclaim to an action in foreclosure on the note or mortgage."). Instead, Plaintiffs are making a separate claim for fraud based on false statements which induced them to make additional payments and incur additional expenses. This portion of the fraud claim was not required to be litigated during the foreclosure, as it was not a defense to the foreclosure.

Accordingly, the Court finds that Plaintiffs' claim is not barred by res judicata to the extent it does not attack the foreclosure judgment. Plaintiffs may not raise any claim relating to the original mortgage or to the loss of their home in the foreclosure action. But Plaintiffs may bring the fraud claim as it relates to separate and distinct injuries cause by BOA's allegedly false statements and practices regarding HAMP.

4) <u>Reasonable Reliance</u>

BOA argues that Plaintiffs are barred from bringing this fraud claim on its statements regarding the HAMP program and HAMP qualifications because the Plaintiffs had access to the same information as BOA. Dkt. 139 at 5–8. BOA points to *Greenberg v. Miami Children's Hosp. Research Inst., Inc.*, 264 F. Supp. 2d 1064 (S.D. Fla. 2009), to support its claim that Plaintiffs cannot sustain a fraud claim

15

when the information was just as accessible to them as it was to the defendant. Dkt. 139 at 7. However, this case is factually distinguishable from *Greenberg*. *Greenberg* dealt with fraudulent concealment of an intent to patent a scientific discovery. In *Greenberg*, the plaintiffs were active participants in the medical research for which the defendant received a patent; they provided funding and tissue donations over the course of several years. This level of involvement in the process differs from the Plaintiffs here merely providing documents to BOA for its approval.

     Further, the concealment of a patent is different than the concealment alleged here. A patent being issued is publicly available information published by a government entity, but the Plaintiffs' HAMP application status was only known to BOA. While the requirements for HAMP were publicly available it was reasonable for the Plaintiffs to rely on statements made to them by BOA about the status of their HAMP application which was being processed by BOA. Unlike with a patent, there is no independent third party reviewing the Plaintiffs' HAMP application that the Plaintiffs could have checked. Here, Plaintiffs must rely on BOA to determine the status of their application.

     The court in *Greenberg* also made a point of saying the plaintiffs could have discovered the defendants' intent to obtain a patent by "a simple phone inquiry to the Defendants[.]" *Greenberg*, 264 F. Supp. 2d at 1074. However, the Plaintiffs

16

here tried repeatedly to call BOA and obtain information and they allege BOA knowingly made false statements regarding their application in response to these calls. This is not a case where there is only an allegation of a failure to disclose information that was otherwise available. Here Plaintiffs have alleged the BOA made statements it *knew to be false* combined with selective omissions to cause Plaintiffs to act. This step beyond simple nondisclosure allows Ms. Rodriguez to continue to trial on this claim.

5) Contract Provisions

Finally, BOA argues that Plaintiffs' claim is foreclosed because of their failure to satisfy the contractual conditions precedent in the mortgage agreement. Dkt. 139 at 15–17. BOA argues that Plaintiffs' cause of action arises out of the mortgage and, as such, Plaintiffs were required to notify BOA of the alleged breach and give BOA a reasonable period of time to take corrective action prior to filing suit. Since Plaintiffs provided no notice to BOA before filing suit, BOA argues the claim is barred. Plaintiffs argue that they are not suing for breach of contract under the mortgage, so the condition precedent does not apply. Dkt. 146 at 11–13.

To the extent Plaintiffs are claiming omissions of statements that were available to them in their loan documents and implicating the mortgage, they are barred from raising the claim because of their failure to satisfy the condition

17

precedent. *Dykes v. Bank of Am., N.A.*, No. 17-CV-62412-WPD, 2018 WL 7822282, at *3 (S.D. Fla. July 10, 2018). But to the extent that Plaintiffs' claim is premised on false statements of fact regarding their HAMP application or their approval and subsequent payment of trial payments, these claims do not implicate the notice and cure provision of the mortgage. *Brexendorf v. Bank of Am., N.A.*, 319 F. Supp. 3d 1257, 1265 n.3 (M.D. Fla. 2018) ("The remaining conduct giving rise to the Fraud Claim—that is, the HAMP Eligibility Misrepresentation, Supporting Documents Misrepresentation, Trial Payments Omission, and Inspection Fee Omissions—do not implicate the mortgage."); *Dykes*, 2018 WL 7822282, at *3 ("Plaintiff's claim is premised on the allegations that Defendant's employees made multiple false statements of fact to Plaintiff, including that Defendant had not received her HAMP application, even though she repeatedly submitted it, and that she was falsely informed that she was approved for a trial payment period. These allegations do not arise from the mortgage, nor do they allege any breach of provisions of or duty owed by reason of the mortgage agreement.").[9] Thus, Ms. Rodriguez's claim may continue to trial.

## CONCLUSION

For the reasons stated above the Court grants in part and denies in part Defendant's Motion for Summary Judgment. Dkt. 139. The Court finds issues of

---

[9] BOA's arguments regarding breach of contract are denied on the same basis.

18

material fact remain that prevent summary judgment regarding the alleged fraudulent statements by BOA regarding Plaintiffs' HAMP application status and the resulting damages. Summary judgment is granted to Defendant against Mr. Cruz; and for any damages incurred before the first allegedly false statement. Finally, Ms. Rodriguez is barred by res judicata from using this claim to attack the validity of the foreclosure judgment but may continue with this claim as a separate and distinct action for fraud.

**DONE AND ORDERED** at Tampa, Florida, on August 19, 2020.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO**:
Counsel of Record